Jenna Dakroub, CA #350170
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff Christopher Gray*
CONSUMER ATTORNEYS
6345 Balboa Boulevard, Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GRAY,<br><br>Plaintiff,<br><br>v.<br><br>RALPHS GROCERY COMPANY, THE KROGER CO., METRO ONE LOSS PREVENTION SERVICES GROUP (WEST COAST), INC., and JOHN DOE ARMED SECURITY GUARD,<br><br>Defendants. | Civil Action No.  2:23-cv-08278<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**Americans with Disabilities Act, 42 U.S.C. § 12101**<br><br>**California Unruh Civil Rights Act, Cal. Civ. Code §51 et seq.**<br><br>**California Negligence and Assault** |

Christopher Gray brings this action against Ralphs Grocery Company ("Ralphs"), The Kroger Co. ("Kroger"), Metro One Loss Prevention Services Group (West Coast), Inc. ("Metro One"), and John Doe, for their violations of Mr. Gray's federal civil rights under the Americans with Disabilities Act (ADA), and his rights under California's Unruh Civil Rights Act (Unruh Act), and his rights at common

1

law to be free from assault and bodily harm, negligence in hiring and supervision, and respondeat superior.  In support of his claims, he alleges the following facts and demands a trial by jury thereon:

## **INTRODUCTION**

1.     In about March of 2023, Mr. Gray entered his Los Angeles neighborhood Ralphs near his home with the intent to make a purchase.  Mr. Gray frequently enters this particular Ralphs with the intent to make purchases.  He can walk to Ralphs from his home with only his backpack to carry home his purchases.

2.     The State of California, as well as Ralphs, have a public and business policy to discourage or discontinue single use grocery bags and to encourage or require reusable bags.  In fact, Ralphs sells reusable grocery bags in its stores, including Mr. Gray's neighborhood Ralphs .

3.     Mr. Gray is well known to the employees of his neighborhood Ralphs because he shops there so frequently, at times on a daily basis.  He almost always has his backpack with him wherever he goes.

4.     Frequently shopping at his neighborhood Ralphs is one of his routines that gets him out of his house, allows him to walk through his neighborhood, to interact with other people, and to make purchases of groceries and sundries.

5.     This lawsuit is about a physically, mentally, and emotionally violent attack by a Ralphs security guard upon Mr. Gray while shopping at his

neighborhood Ralph's store, which violent attack has left Mr. Gray with lasting physical, reputational, mental and emotional injuries.

6.      Mr. Gray brings this lawsuit seeking damages for his injuries caused by Ralphs, its parent company, Kroger, Metro One, and the individual security guard who within his scope of employment unlawfully monitored and then while brandishing a firearm, wantonly attacked Mr. Gray.

## JURISDICTION AND VENUE

7.      The Court has federal question jurisdiction over this action that arises under the laws of the United States under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12101, et seq.

8.      The Court has supplemental jurisdiction over the California state law and common law claims that arise under a nucleus of common facts arising from the same in conduct by the Defendants in the same occurrence under 28 U.S.C. § 1367.  The Unruh Act expressly incorporates the ADA.

9.      Venue is proper in this District and Division because the unlawful conduct giving rise to the causes of action in this complaint occurred in the City of Los Angeles, which is within the geographic confines of the Central District of California, Western Division.  28 U.S.C. § 1361(b)(2).

10.    All of the Defendants are physically present in the State of California where the substantial conduct occurred.  Thus the Court has personal jurisdiction over all parties.

## PARTIES

11.    Mr. Gray is an individual, citizen and resident of Los Angeles, California, and the United States.

12.    The Social Security Administration has determined that Mr. Gray is totally and permanently disabled due to a mental impairment. Thus, Mr. Gray is a member of a protected class due to his disability.

13.    His disability prevents him from being able to do many daily activities or to work.

14.    Mr. Gray needs assistance to do activities outside of his established routines.

15.    In order to help manage his disabling condition, he engages in routines that allow him to get exercise, be outdoors, interact with others, and try to engage in tasks or activities that abled people are able to accomplish without difficulty.

16.    Mr. Gray is African American, thus he is a member of a protected class of person protected by the laws of the United States and California.

17.    Defendant Ralphs Grocery Company is an Ohio corporation wholly owned by The Kroger Company and does business in California as Ralphs.  At all

times pertinent hereto, Kroger directed, controlled, and approved Ralphs Grocery Company d/b/a Ralphs' conduct.  Ralphs operates numerous brick and mortar places of business throughout California, including within the City of Los Angeles. Ralphs can be served through its registered agent, Corporation CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

18.    Defendant The Kroger Co. is an Ohio corporation that is organized, headquartered, and operates a principal place of business in Ohio.  Kroger owns and operates numerous grocery stores throughout the United States doing business under a variety of names including but not limited to Kroger, Ralphs, Dillons, Smith's, King Soopers, Fry's, QFC, City Market, Owen's, Jay C, Pay Less, Baker's, Gerbes, Harris Teeter, Pick 'n Save, Metro Market, and Mariano's.  Kroger operates numerous brick and mortar places of business throughout California, including the City of Los Angeles.  Kroger can be served through its registered agent, Corporation CSC – Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

19.    Upon information and belief, Kroger controls and directs all of Ralphs' conduct, and Ralphs carries out the wishes and directions of Kroger.

20.    Upon information and belief, Kroger and Ralphs share a corporate offices in Los Angeles and Compton, California, among other locations in California.

21.    Defendant Metro One Loss Prevention Services is a foreign corporation organized under the laws of Maryland, with its principal place of business in Staten Island, New York. Metro One does business throughout the State of California, hiring, employing, and supervising security guards, including armed security guards to place in businesses such as Ralphs.    Metro One can be served through its registered agent, CT Corporation System, located at 330 N Brand Boulevard, Glendale, CA 91203.

22.    Defendant John Doe is a Security Guard whose identity is unknown at this time, but who upon information and belief is a retired or active law enforcement officer that works as an Armed Security Guard at Ralphs.    He was operating within the scope of his employment at the time he attacked Mr. Gray while brandishing a gun.

23.    Upon information and belief, Defendant John Doe can be found in Los Angeles, California, where he works.

24.    Upon information and belief, Kroger and Ralphs together control and direct the duties, conduct, and on-site supervision and control of Metro One and its

employee, John Doe, while in the course of acting in their capacity to provide security guard services to Kroger and Ralphs.

25. Upon information and belief, Metro One additionally controls and directs the training, supervision, and conduct of its employee John Doe in order to fulfill the obligations imposed by its contract with Kroger and/or Ralphs.

26. Upon information and belief, the relationships, duties, and obligations of the Defendants are governed by contract.

## **FACTS**

27. Ralphs is a grocery store that is open to the public throughout California, including a location at 11922 S. Vermont Avenue, Los Angeles, CA 90044, which is the store where the events pleaded in this Complaint happened.

28. Ralphs is a place of business and of public accommodation.

29. Ralphs is subject to the accessibility requirements of state and federal laws.

30. Ralphs is subject to the civil rights guaranteed under state and federal law.

31. Ralphs has taken certain security measures that are identifiable on the exterior and interior of the store, including electronic video and audio surveillance and placement of personnel who perform security and loss prevention functions such as armed security guards.

32.     One of Ralphs security measures is that it has a video surveillance and recording system.

33.     Another of Ralphs security measures is that it has security guards at the entrance/exit doors.

34.     Mr. Gray is a frequent shopper at his neighborhood Ralphs and is well-known to the employees and Security Guards there.

35.     Over time, Mr. Gray has been on the receiving end of frequent interactions initiated by Ralphs, including but not limited to being monitored while in the store, but most frequently from Security Guard demands to leave his backpack unsecured outside or "at the front of the store" while he is shopping in the store.

36.     One day around March of 2023, Mr. Gray entered Ralphs with a *bona fide* intent to do business at Ralphs, as he has done weekly, if not daily, for months prior to this particular day.  On this day, he intended to buy creamer for his coffee. He posed no direct threat to the health and safety of others.

37.     While Mr. Gray was at Ralphs, the Security Guard placed himself as a physical barrier to Mr. Gray's movement.

38.     While Mr. Gray was at Ralphs, Defendants had in place policies and procedures that targeted Mr. Gray for monitoring and unwanted contact while he was lawfully on the premises to shop.

39.    Although Mr. Gray is a proverbial "regular," this particular Security Guard has upon more than one occasion singled Mr. Gray out for harassment compared with other shoppers, including the day in question in March of 2023.

40.    Upon information and belief, Defendants do not subject all of their customers to hostile demands to prohibit their bags and/or subject them to hostile speech and physical intimidation to elicit compliance with verbal orders.

41.    Many customers bring purses, totes, backpacks, diaper bags, strollers, wheelchairs, and reusable grocery bags, but are not detained and forced to endure the humiliation, threats and physical restraint in the same manner as Mr. Gray.

42.    Using reusable bags is encouraged by Ralphs and the State of California.  At this Ralph's there is no policy, instruction or sign that backpacks are prohibited.

43.    On this particular day, the Security Guard monitored Mr. Gray while he was shopping in the store and before he could make his purchase, the Security Guard demanded Mr. Gray leave his backpack at the front of the store.  Utilizing his physical posture and tone of voice to communicate to Mr. Gray, and which Mr. Gray correctly perceived, not just to threaten but actually to harass, intimidate, humiliate put him at risk of actual physical danger, and actually physical harm him.

44.    Mr. Gray almost always carries his backpack with him. He was not drunk or high, was not acting in a way to cause harm to anyone, and believed he

was being surveilled unfairly when he verbally challenged the Security Guard's request that singled him out without justification.

45.    Mr. Gray's challenge to the Security Guard's command was met with swift escalation.

46.    Mr. Gray wanted to get away from the security guard quickly but the Security Guard used his body, physical size and authority to prevent Mr. Gray from leaving.

47.    When Mr. Gray demanded to speak with a manager, the Security Guard then grabbed Mr. Gray by the collar, produced a gun and brandished it at Mr. Gray, physically touching Mr. Gray while forcing him backwards, threatening Mr. Gray with his words, firearm, and further bodily harm.

48.    Mr. Gray was in sincere fear for his life, his physical safety and his mental and emotional health state when the Security Guard held the gun to Mr. Gray's chest.

49.    This violent, physically and mentally abusive encounter was witnessed by Ralphs employees and customers, as well as recorded by video surveillance.

50.    The escalation was subdued only when the Manager arrived and ratified the Security Guard's conduct by stating that he had a right to do whatever he needed to do.  Mr. Gray requested that Ralphs call the police since he had been threatened with a gun.

51.    Mr. Gray stood waiting for the police to arrive for approximately two hours before the Security Guard allowed him to buy the creamers.  Thereafter, he decided to leave the premises.

52.    Mr. Gray later called the Los Angeles police department to report the assault.

53.    The Los Angeles police responded to the report, but informed Mr. Gray that it declined to arrest or charge the Security Guard, who was an off-duty, retired, or former law enforcement officer.

54.    Mr. Gray promptly, by counsel, alerted Ralphs, Kroger, and Metro One to preserve evidence in anticipation of litigation.

55.    Mr. Gray is left to conclude that despite being a frequent customer known to Defendants, he was unlawfully singled out for discrimination by exclusion from the store, barriers to entry to the store, and physical, mental and emotional attacks based on his disability and/or his African American race.

56.    Mr. Gray is left to conclude that Ralphs, Kroger, and Metro One all trained, instructed, approved, or otherwise ratified the Security Guard's conduct.

57.    From the Security Guard's conduct in using his voice, commands, physical attack, and use of a deadly weapon, it is clear that his intent was to put Mr. Gray in fear of an imminent physical attack or being shot to death.

58.    The Security Guard did, in fact, physically touch the Plaintiff, brandished the weapon, and forced him backwards.

59.    Mr. Gray is well aware that black men, including black men with mental disabilities, are at a great risk of being injured or killed by a gun. In this case, the Security Guard was, upon information and belief, a retired, former, or current law enforcement officer.

60.    Upon information and belief, there is no reason for the Security Guard to brandish a deadly firearm unless his intent is to use it.

61.    Mr. Gray already has difficulty managing daily activities due to his mental disability, and Defendants' conduct understandably and reasonably resulted in Mr. Gray's fear for his physical safety and his life at the moment that the encounter took place.

62.    Upon information and belief, even if Mr. Gray challenged the Security Guard's conduct to monitor and single him out for having a backpack, threatening Mr. Gray with the use of a deadly weapon was disproportional to the situation. There is no possible reason that the Security Guard or anyone at Ralphs could have perceived Mr. Gray to be a danger to them.

63.    As a direct and proximate result of the Defendants' action and inaction, Mr. Gray was put in immediate fear for his life, he was physically touched in such a way to cause him physical injury and sickness, mental anguish and emotional

distress, including exacerbating his mental health condition. Mr. Gray was physically expelled from Ralphs where he was otherwise lawfully present.

64.     The placement of a Security Guard at Ralphs and its checking customer's bags may be reasonable security measures to prevent losses through shoplifting, or to improve customer safety by ensuring that dangerous items aren't brought into the store.

65.     However, upon information and belief, Defendants do not evenly apply a policy of checking bags to prevent losses or dangerous items from entering the store.

66.     Defendants failed to adequately hire, train, and supervise its Security Guard, in use of force with a deadly weapon on its premises.

67.     Defendants all owed a duty of reasonable care in its hiring, training and supervision of armed security guards, including the Security Guard in this case, especially since carry and use of a deadly weapon is a job duty.

68.     Upon information and belief, Defendants ratified the Security Guard's conduct toward Mr. Gray.

69.     Upon information and belief, in fulfillment of its contracts with Kroger and Ralphs, Metro One hires only retired, former, or off-duty law enforcement officers as armed guards.

70.     Upon information and belief, Defendants' armed guards are supposed to hold and maintain certain weapons certifications and concealed carry permits.

71.     Upon information and belief, rather than conducting adequate hiring and screening necessary to place an armed security guard in a consumer setting, such as appropriate background checks, job interviews, testing, and assessment of prior experience, Defendants merely rely on an applicant's status as a current or former law enforcement officer as hiring criteria.

72.     Thus, Defendants breached their duty of care owed to the Plaintiff and the public in the hiring of the armed Security Guard.

73.     Upon information and belief, Defendants do not conduct training of appropriate and adequate firearms use and safety, loss prevention, interpersonal relations, de-escalation, or other consumer shopping-related training necessary for their armed guards to be placed in a consumer retail setting.  Instead, Defendants relied on the Security Guard's past training and certifications instead of providing adequate, appropriate and up-to-date training and supervision.

74.     Thus, Defendants breached the duty of care owed to the Plaintiff and the public in the training of the armed Security Guard.

75.     Upon information and belief, Defendants provide very little or no supervision to armed security guards, including the Security Guard that attacked Mr. Gray.

76.     Upon information and belief, once a Security Guard is hired, he or she is then given a schedule of where and when to show up at Ralphs for work.  Upon information and belief, Security Guards work under the direction of Ralphs, Kroger, and Metro One, but does not receive direct supervision while in the conduct of their duties.

77.     Upon information and belief, loss prevention duties, scenarios, purpose, and human interactions are wildly different from public safety and policing duties when armed police officers operate under the color of law for the public safety rather than to prevent theft of goods.  The difference in the purpose and authority between the two jobs requires training and supervision appropriate to the duties of an armed guard in a grocery store.

78.     Thus Defendants breached their duty of care owed to the Plaintiff and the public in the supervision of the armed Security Guard.

79.     The mere presence of the Security Guard alone wasn't a barrier to entry at the time of the incident, however, the menacing and violent conduct of the Security Guard presents a barrier of access to the Plaintiff as he will be forever more in fear of shopping while Black and having a disability.

80.     Having surveillance by an armed Security Guard who will brandish a gun at a consumer is an unreasonable barrier to access to the store and the shopping

experience by singling out a disabled and/or African American person for more stringent monitoring and harsher treatment than other shoppers.

81.    Thus Defendants excessive monitoring, harassment, and physical violence toward Mr. Gray because he is both disabled and Black, has deprived him of the full and equal enjoyment of the goods, services, facilities, advantages, and accommodations at Ralphs.

82.    Upon information and belief, and based on the facts as they occurred, the Defendants singled out Mr. Gray for discriminatory treatment while shopping at Ralphs based on his race and/or disability, a result of consumer racial and disability profiling in violation of state and federal civil rights laws.

83.    Mr. Gray was further injured by Defendants' negligent hiring, training and supervision of the armed Security Guard. But for the Defendants' negligence, the unqualified, untrained, unsupervised armed Security Guard would not have violated the Plaintiff's rights or caused the Plaintiff's physical, mental and emotional injuries resulting from the violent and humiliating encounter.

84.    The barriers that the Defendants erected to prevent Mr. Gray from enjoying access to and shopping at Ralphs free from harassment or physical attack could be easily remedied by proper hiring, training, and supervision of armed employees especially concerning consumers with a mental disability like Mr. Gray.

85.    Mr. Gray will return to Ralphs despite his very reasonable fear of being subjected to further abuse, because it is not only his neighborhood store, it is also a lifeline to a disabled person who does not drive, and who utilizes walking to and from, and shopping at Ralphs, as routines to assist in his mental health regime.

86.    Mr. Gray is only aware of the barriers that he has encountered described in depth in this Complaint, which is also intended to put Defendants on notice that he will seek an order to remedy all barriers related to his disability.

## COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12182 ET SEQ. (AGAINST RALPHS AND KROGER)

87.    Plaintiff relies on the factual allegations set forth in this Complaint, which form the basis for the relief requested for the Defendants' violations of the ADA.

88.    Defendants committed acts of discrimination in violation of the ADA when they failed to ensure that Mr. Gray enjoyed the privileges, advantages, accommodations, facilities, goods, and services offered at Ralphs, which is a public accommodation, and which was accomplished by and through the conduct of its employee armed Security Guard while carrying out his duties at Ralphs.

89.    Defendants committed acts of discrimination by failing to make reasonable modifications in their policies, practices, or procedures, to accommodate a customer with a mental disability, when such modifications are necessary to afford

goods, services, facilities, privileges, advantages or accommodations to individuals

with mental disabilities such as the Plaintiff.

90.    Implementation of reasonable accommodations would not necessitate a

fundamental alteration in the goods or services at issue.

91.    On information and belief, Defendants have in place policies and

procedures under the guise of loss prevention and safety that resulted in illegally

targeting Mr. Gray for discrimination and persecution based on his disability.

92.    Resources are readily and reasonably available to the Defendants to

prevent and address the violations of the ADA, including implementing policies

and procedures that are designed to help employees, including armed security

guards, treat people with mental disabilities appropriately and with dignity rather

than violence.

93.    The Defendants' violations of Mr. Gray's ADA rights directly and

proximately caused his injuries and resulted in actual damages entitling him to

injunctive relief, attorneys fees, and costs.

## COUNT II
## VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT CAL. CIV. COD. § 51 ET SEQ.
## (AGAINST ALL DEFENDANTS)

94.    Plaintiff relies on the factual allegations set forth in this Complaint,

which form the basis for the relief requested for the Defendants' violations of the

Unruh Act.

95.    California enacted the Unruh Act in 1959 to prevent, address, and remedy violations of its citizens' and residents' civil rights by prohibiting discrimination by businesses in California from unlawfully discriminating against anyone based at least in part on the person's physical or mental disability or their race, among other protected classes of persons.

96.    Mr. Gray has a right under the California Ralph Civil Rights Act to be free from any violence or intimidation by threat of violence, committed against him or his property on account of his disability.

97.    Mr. Gray has a right under the California Ralph Civil Rights Act to be free from any violence or intimidation by threat of violence, committed against him or his property on account of his race.

98.    Under the express provisions of the Unruh Act, a violation of the ADA is a violation of the Unruh Act.

99.    Under the express provisions of the Ralph Civil Rights Act and Unruh Act, Defendants violated Mr. Gray's right to be free from discrimination, violence, and threat of violence based on his race.

100.    The Defendants Ralphs and Kroger violated Mr. Gray's ADA rights, thus they also violated the Unruh Act.

101.    The Defendants Ralphs and Kroger violated Mr. Gray's right to be free from violence under the Ralph Civil Rights Act based on his disability and race.

102.    Metro One and John Doe Security Guard aided and incited the denial of Mr. Gray's civil rights, thus they are also liable for violation of the Unruh Act.

103.    For each and every violation, Mr. Gray is entitled to recover all of the following damages:   economic and non-economic actual damages, which are uncapped and unliquidated, trebled damages, but in any case, statutory damages of not less than $4000 per incident; reasonable attorneys' fees; exemplary damages; and a civil penalty of $25,000.

**<u>COUNT III</u>**
**ASSAULT**
**(AGAINST ALL DEFENDANTS)**

104.    Plaintiff relies on the factual allegations set forth in this Complaint, which form the basis for the relief requested for the Defendants' assault at common law.

105.    Defendants Ralphs, Kroger and Metro One are responsible for employing, supervising, and providing the armed Security Guard with the authority to perform duties as an armed Security Guard at Ralphs.  They are responsible for hiring, training and supervising the armed Security Guard, for allowing him to exert authority while on duty, including brandishing a deadly firearm at an innocent customer.  They are responsible for their employee's method of carrying out their policies in the course of his employment, with their ratification and authority.

Therefore, each one and all of them are liable for the conduct of the armed Security Guard under respondeat superior.

106.    Security Guard is responsible for his own conduct in attacking the Plaintiff.   He owed a duty of reasonable care and breached that duty when he escalated the encounter to physical touching the Plaintiff and brandishing a firearm. He intended to use the physical force and a firearm to cause physical pain, emotional distress, and mental anguish while the Plaintiff feared for his life.   The Security Guard knew or should have known that his use of a gun, at a minimum, was a breach of his duty of care to the Plaintiff.

107.    Upon information and belief, because the Security Guard had been or was at that time a law enforcement officer, he knew or should have known that the physical violence with gun in hand that he visited on the Plaintiff was not proportional to the Plaintiff's protestation about the being harassed for his backpack, trying to leave the conversation, and brushing by with a shoulder contact.

108.    Security Guard was also acting within the scope of his employment when he monitored, stopped, and attacked the Plaintiff.

109.    Security Guard intended to monitor and stop Mr. Gray, verbally abuse and bother him, physically touch him (all while armed with a gun), and then brandish a firearm at Mr. Gray. Any reasonable Security Guard would know for sure, let alone reasonably foresee, that that conduct would cause the Plaintiff to

experience very real fear of physical harm and death, especially for to a Black man suffering from mental disability.

110.    Security Guard was carrying out the wishes of his employers who specifically sought out and hired him as a person trained and employed as a police officer to be armed and to work in loss prevention.  Thus it is obvious he was acting in the scope of his employment and was not on a frolic or a detour.

111.    Defendants are liable, each of them, jointly and severally for: compensatory damages, punitive damages because their conduct was particularly egregious and punitive damages are necessary to punish and deter the Defendants from such conduct in future, and emotional distress damages, including for loss of enjoyment of life.

## COUNT IV
### NEGLIGENCE
### (AGAINST KROGER, RALPHS, AND METRO ONE)

112.    Plaintiff relies on the factual allegations set forth in this Complaint, which form the basis for the relief requested for the Defendants' assault at common law.

113.    Defendants are responsible for the negligent hiring, training, and supervising its employees, including the armed Security Guard and owe a duty of care to customers including Mr. Gray.

114.    Upon information and belief, Defendants breached their duty by failing to adequately screen their employee before hiring to ensure that he had the background, skill and temperament to perform the duties that required him to be armed in a grocery store where the job was loss prevention and customer safety.

115.    Upon information and belief, Defendants breached their duty by relying on pre-hire training as a police officer rather training specific to the job of store security, two jobs that require different skills, temperament, and laws.  They rely on certification and gun licensure rather than providing job-specific and up to date training appropriate for the job.

116.    Upon information and belief, Defendants breached their duty by, *de facto*, failing to supervise their security officers, including the armed Security Guard in this case.  This is a complete dereliction of the duty to supervise an employee with a weapon in a consumer retail environment rather than a law enforcement role.

117.    But for the Defendants' negligence in hiring, training, and supervision, combined with their policies and procedures that discriminated against Mr. Gray, their armed Security Guard would not have injured Mr. Gray.

118.    Defendants are liable, each of them, jointly and severally for: compensatory damages, punitive damages because their conduct was particularly egregious and punitive damages are necessary to punish and deter the Defendants

from such conduct in future, and emotional distress damages, including for loss of enjoyment of life.

## DEMAND FOR RELIEF

Mr. Gray demands relief for these violations of his rights, from each Defendant as described at length in the foregoing Complaint as provided by federal and state law:

1. Entry of an Order declaring that Kroger and Ralphs violated the Plaintiff's ADA rights by discriminating against him on the basis of his disability, providing injunctive relief, compelling the Kroger and Ralphs to immediately come into compliance with the ADA; and an award of attorneys' fees and costs;

2. Money damages as set forth in the Unruh Civil Rights Act, for actual damages, treble damages, statutory minimum damages of $4000 per offense, civil penalty of $25, 000 each, attorneys fees and costs, against Kroger and Ralphs;

3. Money damages provided at common law for the torts of assault and negligence against all Defendants, including but not limited to actual damages including emotional distress damages; compensatory damages; punitive damages;

4. Pre-judgment and post-judgment interest at the legal rate;

5. Other relief that the Court deems just and proper.

1

## **JURY DEMAND**

2

3
Plaintiff hereby demands jury trial on all issues so triable.

4
Respectfully submitted this 2nd day of October 2023,

5

6
*/s/ Jenna Dakroub*
Jenna Dakroub, CA # 350170

7
**CONSUMER ATTORNEYS**

8
6345 Balboa Boulevard, Suite 247
Encino, CA 91316

9
T: (602) 807-1525
F: (718) 715-1750

10
E: jdakroub@consumerattorneys.com

11
*Attorney for Plaintiff,*
*Christopher Gray*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28